UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LORICA L. STOCK,<br><br>  Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>  Defendant. | No. CV-10-00130-CI<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 16.) Attorney Lora Lee Stover represents Lorica L. Stock (Plaintiff); Special Assistant United States Attorney Kathy Reif represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment, and directs entry of judgment for Defendant.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on October 5, 2006.[1]

---

[1]Plaintiff previously filed for disability insurance benefits on June 17, 2005 for a period of disability beginning March 7, 2005. The claim was denied initially, and upon reconsideration in December 2005. The claimant filed an untimely request for hearing on June 14, 2006, and the claimant's application was dismissed on September

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

(Tr. 415.)  She alleged disability due to organic mental disorders and Multiple Sclerosis (MS).  (Tr. 71.)  Her claim was denied initially and on reconsideration. (Tr. 73-75; 78-79.)  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on June 17, 2008, before ALJ R.S. Chester. (Tr. 25-70.) Plaintiff, who was represented by counsel, and vocational expert Deborah LaPoint, testified. (Tr.30-69.)  The ALJ denied benefits on September 11, 2008, and the Appeals Council denied review. (Tr. 13-24; 1.)  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 34 years old with a high-school education and some college. (Tr. 30; 32.)  Plaintiff has past work experience as a fast-food worker, phone center operator and installer of fiber optic cable. (Tr. 32-39.)  Plaintiff testified that in 2005, she began having pain in her kidneys, bladder and lower back that caused her to quit her job at a fast-food restaurant. (Tr. 34-35.)  The symptoms eventually dissipated. (Tr. 35.) Plaintiff reported that since 2000, she had experienced numbness on her face, hands and feet, along with vision problems. (Tr. 35.)  In 2005, Plaintiff had an MRI of her brain that revealed two small white lesions, and at that time, she was diagnosed with MS.  (Tr. 35.)  Later, a neurologist opined that Plaintiff did not carry a diagnosis of MS. (Tr. 19.)  Plaintiff reports that she currently experiences a

---

29, 2006.  (Tr 13.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

variety of symptoms, including tremors, cramping in her legs, vision problems, migraines, tinnitus and significant fatigue. (Tr. 40.)

## ADMINISTRATIVE DECISION

At step one of the sequential evaluation process, ALJ Chester found Plaintiff has not engaged in substantial gainful activity since March 30, 2005, the alleged onset date. (Tr. 15.) At step two, he found Plaintiff had severe impairments of organic mental disorder (Cognitive Disorder NOS), anxiety related disorder (Anxiety Disorder NOS), disorder of the back - discogenic and degenerative (Right Central Disc Protrusion), and neurological disorder (Migraine Headaches). (Tr. 15.) The ALJ determined at step three Plaintiff's medically determinable impairments, alone and in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr. 18.) The ALJ found Plaintiff's subjective complaints regarding functional limitations were not fully credible. (Tr. 22.) At step four, he determined Plaintiff had "the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b). She would be limited to one to three step well-learned processes." (Tr. 21.) The ALJ found Plaintiff is capable of performing past relevant work as a telephone solicitor and fast food worker. (Tr. 23.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo. Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error.

*Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are

"under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v.*

*Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. The Plaintiff contends the ALJ's decision is not supported by substantial evidence. Specifically, Plaintiff complains: (1) The ALJ failed to adequately develop the record when he did not obtain testimony from appropriate medical providers; (2) the ALJ's negative finding of Plaintiff's credibility was erroneous; and (3) the ALJ's hypothetical failed to include all Plaintiff's physical and nonexertional limitations. (ECF No. 14 at 10; 14-16.)  The Commissioner responds that the ALJ did not have a duty to further develop the record because the record clearly established that Plaintiff's impairments did not meet a Listed Impairment, that the credibility determination was supported by "clear and convincing" reasons and the hypothetical was complete. (ECF No. 17 at 2.)

## DISCUSSION

**A.   Duty to Develop the Record.**

Plaintiff contends the ALJ erred because the record does not support the finding that Plaintiff can perform light work. Specifically, Plaintiff contends the record was inadequately developed because no medical expert testified at the hearing, no medical opinion evidence exists to support the conclusion that Plaintiff's impairments did not constitute a Listing, and the record lacks evidence about the proper exertional level in light of the degenerative changes in Plaintiff's cervical spine. (ECF No. 14 at 12-13.)   Plaintiff also asserts that the medical evidence is ambiguous.  (ECF No. 14 at 13.)

Plaintiff contends that the record is insufficient because no medical provider testified at the hearing, or offered a medical opinion that Plaintiff's impairments do not equal a Listing.[2] Contrary to these assertions, the ALJ had no duty to obtain a medical opinion to support the assessment that the Plaintiff's impairments did not meet a Listing. It is the role of the ALJ, not a medical provider, to determine if an impairment meets a Listing:

> A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects ability to engage in gainful activity. The "relationship between impairment and disability remains both complex and difficult, if not impossible, to predict ... The same level of injury is in no way predictive of an affected individual's ability to participate in major life functions (including work) ... Disability may be influenced by physical, psychological, and psychosocial factors that can change over time."

*McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir.2011), quoting American Medical Association, *Guides to the Evaluation of Permanent Impairment*, 5-6 (6th ed. 2008).

Moreover, an ALJ properly rejects a physician's opinion on whether a claimant can work at any job, because this "determination is for the Social Security Administration to make, not a physician." *McLeod* 640 F.3d at 885. "'Although a treating physician's opinion

---

[2]Plaintiff also argues that "there was no review of the Plaintiff's claim file by a physician from DDS at any time..." (ECF No. 14 at 12.) As the Commissioner points out, the record contradicts this assertion. Alfred Scottolini, M.D., reviewed the medical record for DDS and affirmed the RFC. (Tr. 427.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" *Id.*, quoting *Mayes, Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The law reserves the disability determination to the Commissioner. 20 C.F.R. § 404.1527(e)(1). The ALJ's failure to obtain a medical opinion about the accuracy of his disability determination was not error.

Plaintiff also alleges that the ALJ erred by failing to adequately develop the record. In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001). An "ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes,* 276 F.3d at 459-60 (9th Cir. 2001).

In this case, the ALJ's duty was not triggered because the record is unambiguous and contains sufficient evidence to support the ALJ's conclusions that neither Plaintiff's physical nor mental impairments, or the combination of both, met the Listings. (Tr. 18-19.)

For example,[3] the ALJ carefully reviewed the medical reports

---

[3]Plaintiff failed to specify which impairment, or if it is the combination of impairments that she believed meets or equals a Listing. As Defendant points out, Plaintiff failed to "present a plausible theory for how her impairments meet a Listing." (ECF No.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

related to Plaintiff's spine.  Listing 1.04 addresses disorders of the spine.  See 20 C.F.R., Pt. 404, Appx. A., Subpart P, Sec. 1.04 (parenthesis omitted).  To meet the Listing, a claimant must establish:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

See 20 C.F.R., Pt. 404, Appx. A., Subpart P, Sec. 1.04B.

The record reveals that none of these conditions are met in this case. The ALJ noted that while an MRI from 2006 showed a broad-based central and right paracentral disc protrusion, Stephen Pugh, M.D., concluded that Plaintiff did not require surgery.  The most recent MRI from June 2008 indicated a persistent disc-spur complex at C5-6, but noted the condition had not significantly changed from 2006.  (Tr. 18, 287.)  Contrary to Plaintiff's claims she suffers

---

17 at 5.) At step three, An ALJ is not required to discuss equivalency unless the claimant has proffered a plausible theory as to how the combined impairments satisfy the criteria for a Listing. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

"degenerative changes of the cervical spine from an objective standpoint," the ALJ noted that the medical evidence indicates Plaintiff has experienced no significant deterioration or change in this condition. (ECF No. 14 at 13; Tr. 18.)

Three additional studies – a 2007 electrodiagnostic study by Scott E. Carlson, M.D., a 2007 cervical spine MRI by William Dubiel, M.D., and a 2008 electromyography nerve conduction study by Dr. Carlson – all indicated no significant abnormalities related to the Plaintiff's spine. (Tr. 18, 395-396, 439.) The record was adequately developed and supports the ALJ's conclusion that the Plaintiff's spine condition did not equal a Listed Impairment.

Similarly, with regard to Plaintiff's Multiple Sclerosis diagnosis, insufficient evidence existed that Plaintiff actually suffers from MS. To meet a Listing, the Plaintiff must show, among other things, a diagnosis of MS. 20 CFR Pt. 404, Subpt. P, App. 1 § 11. The ALJ noted that after a 2005 brain scan revealed two lesions, David R. Greely, M.D., described Plaintiff has having "a possibility of MS since March 2005." (Tr. 282.) The ALJ reviewed records from Steven Pugh, M.D., who examined Plaintiff and opined that her symptoms were worsening not due to MS, but due to anxiety. (Tr. 19.) The records include a brain MRI in 2006 that revealed "very little MS-type activity," a normal spine, and lesions that had diminished in size. (Tr. 19.) A 2007 MRI showed no evidence of change, despite Plaintiff's ceasing her medications one month prior to the MRI. (Tr. 19.)

The records also revealed notes from 2008 in which Michael Olek, M.D., reviewed the 2007 MRI and declined to diagnosis

Plaintiff with MS. Plaintiff's subsequent spinal tap revealed unremarkable results. (Tr. 19.) Based on this medical evidence, the ALJ concluded that "Plaintiff does not carry a diagnosis of MS and that it does not represent a severe impairment." (Tr. 19.)

Notwithstanding Plaintiff's claims to the contrary, the medical evidence is unambiguous and adequate to allow for proper evaluation of the claim. While Plaintiff characterizes the various physician's diagnoses as contradictory, a close examination of the record reveals that in the course of treating Plaintiff, the diagnosis changed based upon the lack of MS-type symptoms and signs.

One year after the preliminary diagnosis of MS, Dr. Greeley characterized Plaintiff as a having a "possibility of MS" and that Plaintiff had "concerns that she has a great deal of worsening symptoms. I think that they are more likely related to anxiety. She thinks that they are related to MS." (Tr. 281.) Dr. Greeley referred Plaintiff to Dr. Pugh in light of his expertise in the field. (Tr. 281.) In 2006, Dr. Pugh saw Plaintiff and noted that the 2006 MRI revealed the brain lesions had diminished in size. (Tr. 292.) Several months later, Dr. Pugh again saw Plaintiff who reported no "relapse-type symptoms" but had a "whole list of other symptoms, including back pain, fatigue, intermittent hearing changes and headaches." (Tr. 309.) Dr. Pugh concluded Plaintiff's MS was "fairly mild" and the scan revealed "not...much evidence of MS at all...." (Tr. 309.) Dr. Pugh concluded that Plaintiff's "whole host of various symptoms ... are most likely secondary to anxiety or a somatic disorder." (Tr. 309.)

The medical records reveal that while Plaintiff had two lesions

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

in her brain, the physicians concluded that after treating Plaintiff's varied and seemingly unrelated symptoms over time, a diagnosis of MS was inappropriate. The ALJ's conclusion that Plaintiff's condition does not meet a Listing is supported by an unambiguous, sufficient record.

**B.   Plaintiff's Credibility.**

Plaintiff argues that the ALJ failed to articulate "convincing rationale" for disregarding Plaintiff's testimony about the severity of her symptoms. (ECF. No. 14 at 14-15)  When the ALJ finds a claimant's statements as to the severity of impairments, pain, and limitations are not credible, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's allegations. *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002)*; Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).  If no affirmative evidence exists that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's allegations regarding the severity of symptoms. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ engages in a two-step analysis in deciding whether to admit a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Under the first step, the ALJ must find the claimant has produced objective medical evidence of an underlying "impairment," and that the impairment, or combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986).  Once the *Cotton* test

is met, the ALJ must evaluate the credibility of the claimant. In evaluating credibility, the ALJ may consider an unexplained failure to follow treatment recommendations and testimony by the claimant "that appears less than candid." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Also, the ALJ may consider the lack of consistent treatment, or an "unexplained or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" can cast doubt on a claimant's sincerity. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.2005).

In this case, Plaintiff alleged that the severity of her symptoms prevented her from working. In discrediting that testimony, the ALJ thoroughly reviewed multiple medical opinions that indicated Plaintiff's symptoms were not due to MS, but rather were due to anxiety.[4] Yet despite repeated instructions and encouragement to

---

[4] For example, the ALJ cited Dr. Pugh's December 2006 notes that indicate his opinion that Plaintiff's "whole host of various symptoms" was likely secondary to anxiety or somatic disorder. (Tr. 22.) The ALJ also referred to Dr. Greeley's opinion that Plaintiff's worsening symptoms were due to anxiety, not MS. (Tr. 22.) Additionally, the ALJ noted that Teri Tupper, ARNP, reviewed two MRI results from Plaintiff's brain and concluded that none of the symptoms she was experiencing could be blamed on the lesions revealed in the MRI. (Tr. 22.) Ms. Tupper repeatedly advised Plaintiff to seek mental health counseling, yet she did not. (Tr. 22.) Also, the ALJ noted 2008 exam notes by Christie L. Gibson that

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

seek mental health assistance, Plaintiff resisted seeking treatment. (Tr. 295; 388; 392; 447-48; 502.)

In light of Plaintiff's failure to seek mental health counseling for her anxiety and panic attacks despite repeated instructions to do so, the ALJ's credibility determination is a reasonable interpretation of the evidence, is supported by specific, "clear and convincing" reasons, and, therefore, may not be disturbed.

**C.   The Hypothetical**

Plaintiff argues that the hypothetical failed to include all Plaintiff's physical and mental limitations. (ECF No. 14 at 10; 14-16.)  Plaintiff specifically points to the fact that the hypothetical did not contain "limitations posed by her cervical condition regarding finger, handling and push/pull movements as a result of her upper extremity impairments." (ECF No. 14 at 14.) In addition, Plaintiff alleges the hypothetical lacked limitations related to "how her mental illness would affect her ability to attend and concentrate, nor how stress in the workplace would affect this condition." (ECF No. 14 at 14.)

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical

---

indicate her opinion the majority of Plaintiff's symptoms are due to panic attacks.  (Tr. 22)

evidence to qualify as substantial evidence. See *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." *Id*. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as Plaintiff's residual functional capacity of "light work."[5] (Tr. 21; see CFR §404.1567(b).) In response to the hypothetical question, the vocational expert testified that an individual with those limitations, and who had the same age, education and work experience as Plaintiff, would be able to perform the past relevant jobs of telephone agent and fast food worker. (Tr. 24.) Based on the testimony of the vocational expert, the ALJ found Plaintiff to be capable of performing these past jobs, and that these jobs exist in significant numbers in the national economy. (Tr. 24.)

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical

---

[5]Tr. 64:

> Ms. Lapoint, if we assume that the claimant could, with her particular age, experience, and education, is able [sic] to lift 20 pounds occasionally, 10 pounds frequently, can ... stand and walk... six hours in an eight hour day and has unlimited use of her extremities, could the claimant perform her past work? ... If we added additional restriction that she's limited to one and two step simpler processes or three step repetitive type tasks, would she still be able to perform her past work?

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 4416.929.

In Social Security Ruling (SSR) 96-4p, the SSA explained what is needed under SSA regulations to show a medically determinable impairment. SSR 96-4p, 1996 WL 374187 (July 2, 1996).[6] The ruling clarified "[a]lthough the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone." *Id.* at 1 (footnote omitted); see also 20 C.F.R. §§ 404.1508, 416.908.

The distinction between symptoms and signs is: "symptoms ... are an individual's own perception or description of the impact of

---

[6]"SSRs do not have the force of law" but "represent the Commissioner's interpretation of the agency's regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001). Courts therefore "give them some deference" as long as they are consistent with the Social Security Act and regulations. Id. (citation omitted). SSR 96-4p is consistent with the purpose of Title II and XVI of the Social Security Act to provide financial assistance to those who are disabled. See *Kildare v. Saenz*, 325 F.3d 1078, 1080 (9th Cir. 2003).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

his or her physical or mental impairment(s) .... [W]hen any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.' " SSR 96-4p, 1996 WL 374187, at 1 n.2; see also 20 C.F.R. §§ 404.1528(a)- (b), 416.928(a)- (b). Objective medical evidence is critical to a determination of disability:

> [R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.
>
> ... In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process.

SSR 96-4p, 1996 WL 374187, at 1-2.

Thus, Plaintiff can establish an impairment only if the record includes signs – the results of "medically acceptable clinical diagnostic techniques," such as tests – as well as symptoms, or Plaintiff's representations regarding her impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th 2005). Additionally, a medical opinion offered in support of an impairment must include symptoms and a diagnosis. *Id.,* citing SSR 96-6p, 1996 WL 374180, at 1 (July 2, 1996).

In this case, Plaintiff complains on appeal that the hypothetical failed to incorporate her self-reported symptoms, such as hand weakness, cramping in her legs, and fatigue. But Plaintiff failed to provide a medical diagnosis related to these symptoms. In

the absence of a medical diagnosis that would support these symptoms as signs, the ALJ's hypothetical properly omitted these purported limitations.

Moreover, the hypothetical was proper because it included the limitations as assessed by both Joyce Everhart, Ph.D., and Mary A. Gentile, Ph.D. Dr. Everhart opined in 2006 that Plaintiff had the ability to listen, understand, and remember a three-step direction. (Tr. 306.) She also determined Plaintiff has the ability to complete one or two-step tasks of a repetitive nature, and is likely to have difficulty with complex multi-step tasks. (Tr. 306.)

Dr. Gentile opined that Plaintiff was moderately limited in her abilities to: (a) understand and remember detailed instructions; (b) carry out detailed instructions; (c) maintain attention and concentration for extended periods; and (d) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 411-12.) Also, in June, 2007, Alfred Scottini, M.D., reviewed the medical records and approved the RFC. (Tr. 427.) The hypothetical incorporated these restrictions by including in the description a job that has one and two step simpler processes or three step repetitive tasks. (See Tr. 64.)

As noted above, the ALJ properly rejected Plaintiff's subjective complaints of impairment because the ALJ found they were lacking credibility. Accordingly, the ALJ was not obligated to include those limitations in his hypothetical to the VE. See, *e.g.*, *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Copeland*

*v. Bowen*, 861 F.2d 536, 540 (9th Cir. 1988). In light of Plaintiff's diminished credibility finding and failure to establish a diagnosis supported by medical evidence, the ALJ's hypothetical to the VE was complete.

**CONCLUSION**

The ALJ's findings reflect a rational interpretation of the record, and his determination of non-disability is based on substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED**;

2. Defendant's Motion for Summary Judgment **(ECF No. 16)** is **GRANTED.**

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant, and the file shall be **CLOSED**.

DATED July 14, 2011.

                          S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19